# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **PAUL J. MACKOUL, M.D.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | C.A. No. 14-cv-3334 |
| | ) | |
| **RICHARD PURITZ,** | ) | |
| 25 Pinewood Farm Court | ) | |
| Owings Mills, MD  21117 | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## COMPLAINT

Now comes Plaintiff Paul J. MacKoul, M.D. ("Plaintiff"), by and through undersigned counsel, and for his Complaint against Defendant Richard Puritz ("Defendant"), states as follows:

## THE PARTIES

1.      Plaintiff is a natural person who resides in McLean, Virginia.

2.      Defendant is a natural person who, upon information and belief, resides at 25 Pinewood Farm Court, Owings Mills, Maryland 21117.

## JURISDICTION AND VENUE

3.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.

4.      This Court has personal jurisdiction over Defendant as, upon information and belief, Defendant resides in this District and sought and briefly obtained relevant employment in this District.

5.      Venue is proper in this district as Defendant resides in this district, within the meaning of 28 U.S.C. §§ 1391(b)(1).

6.      Venue is further proper in this district as a substantial part of the events or omissions giving rise to the claim occurred in this district within the meaning of 28 U.S.C. § 1391(b)(2).

BACKGROUND FACTS

**Plaintiff's Medical Practice**

7.      Plaintiff is a Medical Doctor who is board certified in both Gynecology and Gynecologic Oncology.   He specializes in the treatment of gynecological cancers, fibroids, ovarian masses, and endometriosis.

8.      At all times relevant to this case, Plaintiff has been the founder and lead physician at The Center for Innovative GYN Care, P.C. (the "Center"), located in Bethesda, Maryland.

9.      Plaintiff's income is completely dependent upon the number of patients he brings to the Center under a fee-for-service payment model.   Under this model, Plaintiff receives a fee for each medical service he provides, after the services are provided.   Plaintiff's income, business, and professional growth depend on the number of patients he cares for at the Center.

10.     As one of only three doctors employed by the Center, Plaintiff focuses his practice exclusively on surgical procedures.   Unlike other doctors who are able to acquire and continuously work with patients at various points in time during the course of their medical conditions, Plaintiff only markets to patients in need of gynecological surgery.   In most instances, once Plaintiff has performed a surgical procedure on a patient, his professional relationship with that patient terminates immediately.   In this way, Plaintiff is constantly tasked with acquiring new patients to sustain his livelihood.

11.     Because of the nature of their fee-for-service business model and their surgery-focused practice, Plaintiff and other physicians at the Center work diligently to create and maintain positive online presences.  In fact, Plaintiff utilizes online professional profiling tools such as LinkedIn, tumblr, and Pinterest to promote his work and constantly takes steps to ensure he has a positive online professional reputation.

12.     Plaintiff and other physicians at the Center also utilize direct patient marketing and rely significantly on patient referrals to acquire new patients.   This marketing strategy includes relying on internet reviews and referrals to capture new patients.   Plaintiff acquires the majority of his patients through the online referrals and reviews he receives.   In this way, Plaintiff's livelihood is directly affected by patient reviews that are posted about him on online physician rating sites.

13.     RateMDs      (www.RateMDs.com),       Vitals       (www.vitals.com),       and UCompareHealthcare (www.ucomparehealthcare.com) are threes websites that allow patients to anonymously   post   written   reviews   of   their   physicians.      RateMDs,   Vitals,   and UCompareHealthcare are highly trafficked websites.  For example, over two million patients have posted reviews on RateMDs and over 100 million people have used RateMDs to find information about physicians.  Combined, UCompareHealthcare and Vitals are visited more than 100 million times annually.   Plaintiff regularly receives highly positive reviews on online physician rating websites.  He has an overall ranking of 4 out of 5 stars on RateMDs and 3.5 out of 4 stars on Vitals.

14.     Physician rating websites like RateMDs, Vitals, and UCompareHealthcare are meant to allow former and current patients to review their physicians based on those patients' first-hand knowledge about – and personal experiences with – the physicians.

**Defendant's Conditional Employment With The Center**

15.     On or around September 16, 2014, Plaintiff and the Center offered Defendant a position as Vice President of Sales, and conditioned this offer on the results of a background and reference check of Defendant.

16.     While awaiting the results of Defendant's background and reference check, the Center temporarily employed Defendant on September 16 and 17, 2014.  During those two days, Defendant attempted to make sales to the Center of basic medical supplies on behalf of a medical supply company with which Defendant had not previously identified any relationship.  When asked about this inappropriate conduct, Defendant claimed that his wife was responsible for running the medical supply company and that he was Vice President of that company in name only.

17.     On another occasion during his two-day, conditional employment with the Center, Defendant made disparaging comments about Plaintiff based on information he found on the internet.  Defendant told Teri Gilbert, who was an employee of the Center at the time, that he (Defendant) had searched for Plaintiff online and discovered negative information.  Specifically, Defendant told Ms. Gilbert that he found and read lawsuits against Plaintiff and that one such lawsuit alleged that Plaintiff unnecessarily removed a woman's ovaries.  Defendant also told Ms. Gilbert that he found citations and reprimands against Plaintiff by the Maryland Board of Physicians (the "Board").  In addition, Defendant indicated to Ms. Gilbert that Plaintiff had been criticized by former patients and the Board for his "unprofessional" conduct and demeanor.

18.     Another lawsuit against Plaintiff that is readily available online alleges that Plaintiff negligently cracked a patient's uterus, leaving the patient unable to conceive or carry a

pregnancy to term.  Upon information and belief, Defendant read pleadings from that lawsuit when he read other information about Plaintiff on the internet in or around September 2014.

19.     Upon completing the background and reference check process, the Center obtained an employment verification report for Defendant.[1]  The report revealed that Defendant had lied on the résumé he submitted to the Center during the job application process.[2]  The Center discovered that Defendant had lied on his résumé about his previous job titles, the time periods during which he was previously employed, and the companies for whom he had worked.

20.     After discovering Defendant's dishonest and duplicitous behavior, the Center revoked its conditional offer of employment to Defendant, with the necessary conditions never having been satisfied, and terminated his employment with the Center on or around September 17, 2014.

**The Posting of Negative Reviews of Plaintiff**

21.     Less than a month after Defendant's employment with the Center was terminated, two negative physician reviews about Plaintiff were anonymously posted on Vitals and RateMDs on the same day.  The Vitals review, entitled "Horrible Doctor," stated:

> Dr. MacKoul is uncaring and unskilled as a surgeon. He is highly unethical. Please google the Maryland Board of Physicians where you can read some complaints against him. There are more to come. He cracked my friend's uterus in 2 pieces and left it that way. She at 30 years old could never have kids. He does not have any integrity as a professional or a human being. Run do not walk away!

The RateMDs review stated:

> I beg of any woman considering Dr. MacKoul to read his reprimands on the MD Board of Physicians. Dr. MacKoul has serious psychological issues. He removed my ovaries without my permission, never told me and put me into menopause

---

[1]     Defendant's employment verification report is attached hereto as Exhibit A.

[2]     The résumé Defendant submitted as part of his application to the Center is attached hereto as Exhibit B.

with infections and not being able to have intercourse. He has been reprimanded by the medical board for unprofessional demeanor with patients. He tries to convince patients to remove their uterus or ovaries when it is not necessary. He is truly a monster to women. I only pray they finally take away his license before he does any more damage to another woman.

22.     The Vitals and RateMDs posts immediately damaged Plaintiff's business and professional reputation.  In the week following the posts, Plaintiff had significantly fewer new patients than he typically does on a weekly basis.  Additionally, Plaintiff had fewer surgeries scheduled in the week following the posts than he had in typical previous weeks.

23.     Because of this significant damage, Plaintiff and the Center requested that Vitals and RateMDs remove the posts.  After several days, both websites removed the posts, acknowledging the malice with which they were written and the likelihood that they were not authored by Plaintiff's patients.

24.     Within two days of the removal of the Vitals and RateMDs posts, two more negative reviews were anonymously posted on RateMDs and UCompareHealthcare.  The RateMDs post stated:

> I had a horrible experience with Dr. MacKoul.  He was unprofessional to me.  He caused me a lot of grief from the mistakes he made during the surgery.

The UCompareHealthcare post, entitled "Dr. MacKoul is the Worst" stated:

> Put his name in the licensee lookup in MD Medical Board.  The charges he has been found guilty for are only some of the damages he has done.  He is the worst gyn in the country.  Horrible, horrible, horrible.

25.     All four of the negative posts about Plaintiff refer to information that is readily available online, and include the same allegations about Plaintiff to which Defendant referred during his conversation with Ms. Gilbert.  In addition, three of the four posts instruct readers to

find negative information about Plaintiff on the website for the Board – the same website to which Defendant referred during his conversation with Ms. Gilbert.

26.     The posts on RateMDs and Vitals specifically reference alleged conduct by Plaintiff that formed the bases of two lawsuits against him.  As Defendant acknowledged in his September 2014 conversation with Ms. Gilbert, certain documents from these lawsuits are easily accessible online, and Defendant read them.  Consequently, Defendant was familiar with the alleged facts of these lawsuits at the time the negative reviews were posted.

27.     The conduct alleged in those lawsuits purportedly occurred between 2006 and 2008.  Nonetheless, the reviews on Vitals and RateMDs that referenced facts from those suits were posted over six years later, on October 12, 2014 – less than a month after Defendant's termination.  The second set of negative reviews were posted on the same day (October 18, 2014), just a few days after the first posts were removed.   In fact, the second RateMDs review was posted within 24 hours of the removal of the first RateMDs post.

28.     Upon information and belief, Defendant wrote and submitted the negative reviews of Plaintiff on Vitals, RateMDs, and UCompareHealthcare, or caused those negative reviews to be written and submitted, with the intent of damaging Plaintiff's professional reputation and decreasing his source of income.

29.     The negative reviews written, upon information and belief, by or at the direction of Defendant, about Plaintiff and posted onto RateMDs, Vitals, and UCompareHealthcare are false and expose Plaintiff to public scorn, hatred, contempt, or ridicule.

30.     The negative reviews written, upon information and belief, by or at the direction of Defendant, incorporate false and defamatory information about Plaintiff's professional history have affected Plaintiff's online presence and, in turn, have damaged his reputation and business.

Because of these recent and highly viewed posts, negative information about Plaintiff now appears on the second page of Plaintiff's Google search results.  Before the posts, the first several pages of Plaintiff's Google search results contained only positive information about Plaintiff.

31.     Plaintiff has suffered significant economic, professional, and emotional harm as a direct and proximate result of these posts.  Plaintiff's average number of new patients and scheduled surgeries per week has significantly and notably declined.   For example, Plaintiff typically performs six or more surgeries a day, but, since the negative reviews were posted, he has averaged closer to four scheduled surgeries per day.  Since Plaintiff almost always receives positive online reviews, he is especially hurt by the series of false and malicious reviews that were recently posted by Defendant.  In addition, because Plaintiff performs 80% of the surgeries at the Center, the impact of Defendant's negative statements is especially severe on his business.

## Count I
## (Defamation)

32.     Plaintiff incorporates by reference Paragraphs 1-31 of the Complaint as if fully set forth herein.

33.     Upon information and belief, Defendant defamed Plaintiff by making, or causing to be made, defamatory communications about Plaintiff to third party readers of RateMDs, Vitals, and UCompareHealthcare.

34.     Upon information and belief, these communications were false and written as if Defendant had first-hand knowledge about their subject matters, even though he did not.

35.     Upon information and belief, Defendant authored, or caused to be authored, negative reviews of Plaintiff as if he or a friend of his had personal experience with Plaintiff, but Defendant has never been a patient of Plaintiff's.

36.     Upon information and belief, Defendant was at fault for posting online, or causing to be posted, the defamatory statements about Plaintiff.

37.     Upon information and belief, Defendant intentionally and maliciously published, or caused to be published, four different false and defamatory statements about Plaintiff on two separate occasions following Defendant's termination from employment with the Center.

38.     Upon information and belief, Defendant acted with actual malice when he posted, or caused to be posted, the comments because he posted them, or caused them to be posted, knowing that he did not have first-hand knowledge of their truth and, as such, either recklessly disregarded the truth or acted with actual knowledge of their falsity.

39.     The statements, which, upon information and belief, were made by or at the direction of Defendant, contain implied assertions of underlying objective fact, and therefore they are actionable as defamatory.

40.     The statements, which, upon information and belief, were made by or at the direction of Defendant, impair and hurt Plaintiff's livelihood and affect Plaintiff's fitness for the proper conduct of his business.

41.     The statements, which, upon information and belief, were made by or at the direction of Defendant, impute to Plaintiff some incapacity or lack of due qualification to perform his job duties as a physician and, if they were true, would render him less fit to properly fulfill those duties.

42.     As such, the statements are defamatory per se.

43.     As a direct and proximate result of Defendant's intentional and ongoing defamation, Plaintiff has suffered and continues to suffer harm to his livelihood, professional reputation, and emotional wellbeing.

44.    Defendant acted with actual malice when, upon information and belief, he posted, or caused to be posted, the defamatory comments about Plaintiff online, and acted with wrongful motive and the intent to injure Plaintiff.

45.    Further, upon information and belief, Defendant made, or caused to be made, the defamatory falsehoods with actual knowledge that they were false.  As such, Plaintiff is entitled to punitive damages for Defendant's unlawful behavior.

46.    WHEREFORE, Plaintiff requests relief as set forth in the Prayer for Relief.

## Count II
### (Intentional Infliction of Emotional Distress)

47.    Plaintiff incorporates by reference Paragraphs 1-46 of the Complaint as if fully set forth herein.

48.    Upon information and belief, Defendant intentionally posted, or caused to be posted, four defamatory statements about Plaintiff on RateMDs, Vitals, and UCompareHealthcare.

49.    The content of these statements was graphic, severely negative, and highly offensive to Plaintiff's professional reputation.

50.    As such, Defendant's conduct in, upon information and belief, posting the statements, or causing the statements to be posted, was extreme and outrageous.

51.    A causal connection exists between the wrongful statements, upon information and belief, made by or at the direction of Defendant, and the emotional distress to Plaintiff that those statements caused.

52.    As a result of Defendant's unlawful and outrageous conduct, Plaintiff has and is suffering severe emotional distress.

53.     Defendant acted with actual malice, wrongful motive, and the intent to injure Plaintiff.  As such, Plaintiff is entitled to punitive damages for Defendant's unlawful behavior.

54.     WHEREFORE, Plaintiff requests relief as set forth in the Prayer for Relief.

## Count III
## (Invasion of Privacy)

55.     Plaintiff incorporates by reference Paragraphs 1-54 of the Complaint as if fully set forth herein.

56.     Upon information and belief, Defendant intentionally intruded upon Plaintiff's private affairs or concerns by posting, or causing to be posted, on multiple occasions false and defamatory statements about Plaintiff on public physician rating websites.

57.     Defendant's intrusion upon Plaintiff's private affairs or concerns was conducted in a way that would be highly offensive to a reasonable person.

58.     Defendant acted with actual malice, wrongful motive, and the intent to injure Plaintiff.  As such, Plaintiff is entitled to punitive damages for Defendant's unlawful behavior.

59.     WHEREFORE, Plaintiff requests relief as set forth in the Prayer for Relief.

## Count IV
## (Injurious Falsehood)

60.     Plaintiff incorporates by reference Paragraphs 1-59 of the Complaint as if fully set forth herein.

61.     Upon information and belief, Defendant made, or caused to be made, false and injurious statements about Plaintiff that discredit and detract from the reputation of Plaintiff's business.

62.     Upon information and belief, by posting, or causing to be posted, false and defamatory statements about Plaintiff online, Defendant published, or caused to be published,

matter derogatory to Plaintiff's business, with the calculated intent to prevent others from dealing with him or otherwise interfere with his relations to others to his disadvantage.

63.     As a result of Defendant's conduct, Plaintiff has suffered special damages to his business.

64.     Defendant acted with actual malice, wrongful motive, and the intent to injure Plaintiff.  As such, Plaintiff is entitled to punitive damages for Defendant's unlawful behavior.

65.     WHEREFORE, Plaintiff requests relief as set forth in the Prayer for Relief.

**Count V**
**(Tortious Interference With Business Relations)**

66.     Plaintiff incorporates by reference Paragraphs 1-65 of the Complaint as if fully set forth herein.

67.     Upon information and belief, Defendant engaged in the intentional and willful acts of posting, or causing to be posted, false and defamatory statements about Plaintiff on physician rating websites.

68.     Defendant's conduct was calculated to cause damage to Plaintiff in his lawful business as a gynecological surgeon.

69.     Defendant's conduct was done with the unlawful purpose to cause such damage and loss, and without right or justifiable cause.  As such, Defendant acted with malice.

70.     Plaintiff and his business suffered actual damages and loss as a result of Defendant's tortious interference.

71.     Defendant acted with actual malice, wrongful motive, and the intent to injure Plaintiff.  As such, Plaintiff is entitled to punitive damages for Defendant's unlawful behavior.

72.     WHEREFORE, Plaintiff requests relief as set forth in the Prayer for Relief.

## Count VI
## (Breach of the Duty of Loyalty)

73.     Plaintiff incorporates by reference Paragraphs 1-72 of the Complaint as if fully set forth herein.

74.     Defendant owed an implied duty of loyalty to Plaintiff, the founder and lead physician of the Center, during his temporary employment at the Center.

75.     Defendant breached his implied duty of loyalty to Plaintiff during his employment at the Center by attempting to make sales to the Center of basic medical supplies on behalf of a medical supply company with which Defendant had a vested and undisclosed interest.

76.     Defendant's breach was material, as he blatantly refused to act solely for the benefit of Plaintiff and the Center and welcomed conflicts between his duty to Plaintiff and his own self-interest.

77.     Upon information and belief, Defendant intentionally sought to use his relationship with Plaintiff as a means of advancing his and/or his wife's own financial interests.

78.     Defendant's breach harmed Plaintiff by creating a conflict of interest between Plaintiff and his own employee and damaging the integrity of employer-employee relationships at the Center.

79.     Defendant's breach also exposed Plaintiff and the Center to the risk of liability for an employee's unethical conduct.

80.     Defendant's breach was willful and material.  As such, Plaintiff is entitled to punitive damages.

81.     WHEREFORE, Plaintiff requests relief as set forth in the Prayer for Relief.

## Count VII
### (Fraudulent Misrepresentation)

82.     Plaintiff incorporates by reference Paragraphs 1-81 of the Complaint as if fully set forth herein.

83.     On his résumé and during the job application process, Defendant fraudulently misrepresented his professional background and work experiences to Plaintiff and the Center.

84.     Defendant made several representations about his professional background, previous careers, and former work experiences to Plaintiff and the Center with reckless indifference to the truth such that he had knowledge of their falsity.

85.     Defendant made misrepresentations about his professional background and work experiences for the purpose of defrauding Plaintiff into hiring him for a position with the Center for which Defendant was not actually qualified.

86.     Plaintiff relied upon those misrepresentations and had the right to rely upon them with full belief in their truth.

87.     Plaintiff would not have employed Defendant had Defendant not made such false misrepresentations.

88.     Plaintiff suffered damage as a direct result of Defendant's misrepresentations.

89.     Defendant acted with actual malice, wrongful motive, and the intent to injure Plaintiff.  As such, Plaintiff is entitled to punitive damages for Defendant's unlawful behavior.

90.     WHEREFORE, Plaintiff requests relief as set forth in the Prayer for Relief.

## Count VIII
### (Fraudulent Suppression of Material Fact)

91.     Plaintiff incorporates by reference Paragraphs 1-90 of the Complaint as if fully set forth herein.

92.     Defendant owed a duty to Plaintiff to disclose material facts about his professional background and work experiences prior to and during his employment with the Center.

93.     Defendant failed to disclose these facts.

94.     Defendant intended to defraud or deceive Plaintiff by suppressing relevant and material facts about his professional background and work experiences.

95.     Plaintiff justifiably relied on Defendant's concealment when he employed Defendant to work at the Center.

96.     Plaintiff suffered damages as a result of Defendant's concealment.

97.     Defendant acted with actual malice, wrongful motive, and the intent to injure Plaintiff.  As such, Plaintiff is entitled to punitive damages for Defendant's unlawful behavior.

98.     WHEREFORE, Plaintiff requests relief as set forth in the Prayer for Relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that this Court:

1.     Order Defendant to pay Plaintiff actual and compensatory damages for the harms he caused to Plaintiff, in an amount to be proved at trial but, in any event, in excess of $75,000.00; and

2.     Order Defendant to pay punitive damages for his intentional and malicious conduct; and

3.     Order Defendant to pay Plaintiff's attorneys' fees and costs; and

4.     Enjoin Defendant from posting false and defamatory statements about Plaintiff on physician rating websites or elsewhere; and

5.     Order such other and further relief as the Court deems just and necessary.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated:  October 23, 2014

*/s/ Jonathan G. Rose*
*/s/ Richard S. Siegel* _____

Jonathan G. Rose (Bar No. 15138)
Richard S. Siegel (Bar No. 17318)
Alston & Bird LLP
950 F Street, N.W.
Washington, DC  20004
Telephone: (202) 239-3300
Facsimile: (202) 239-3333
jonathan.rose@alston.com
richard.siegel@alston.com
*Attorneys for Plaintiff*